UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CORY MARCANO,

                Petitioner,

      -against-

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------X
DEARIE, District Judge.

**MEMORANDUM & ORDER**

11 CV 5551 (RJD)

      After trial, a jury convicted petitioner Cory Marcano of conspiracy to commit robbery, in

violation of 18 U.S.C. § 1951(a) (Count One); attempted robbery, in violation of 18 U.S.C. §

1951(a) (Count Two); use or possession of a firearm in furtherance of a crime of violence, in

violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Three); conspiracy to retaliate against an

informant, in violation of 18 U.S.C. § 1513(b)(2) (Count Five); conspiracy to tamper with an

informant, in violation of 18 U.S.C. § 1512(a)(2)(c) (Count Seven); conspiracy to distribute and

possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846 (Count Nine);

possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841 (a)(1) (Count

Ten); and use or possession of a firearm in furtherance of a drug trafficking crime, in violation of

18 U.S.C. § 924(c)(1)(A)(i) (Count Eleven).  The jury acquitted Marcano on Count Four, which

charged him with causing the death of a person (Wesley Thomas) through the use of a firearm, in

violation of 18 U.S.C. § 924(j)(1).

      Serving a principal sentence of 39 years,[1] Marcano now moves for federal habeas relief

---

[1] The Court initially sentenced Marcano to 46 years.  On appeal, upon the government's
concession, the Second Circuit remanded for resentencing pursuant to United States v. Regalado,

under 28 U.S.C. § 2255 on three grounds. First, he challenges the three robbery-related convictions (Counts One, Two and Three) on the ground that the government failed to prove that the robbery affected interstate commerce. Second, under the guise of a claim asserting that the Court erred in its instructions to the jury on aiding and abetting the crime of using or possessing a firearm in furtherance of a crime of violence (Count Three), Marcano asserts that his robbery-related convictions are invalid as somehow incompatible with his acquittal on the murder charge. Third, Marcano challenges his conviction on Count Seven, admitting the existence of the informant-tampering conspiracy but claiming that the evidence of his participation was insufficient.

For the reasons that follow, the application for federal habeas relief is denied.

## FACTUAL BACKGROUND

As will be addressed throughout the legal discussion section that follows, the United States Court of Appeals for the Second Circuit has already reviewed the evidence in this case and found it legally sufficient—notably, in language rejecting each of the two species of sufficiency challenges presented in Marcano's appellate papers:

> Because Marcano primarily challenges the credibility of the witnesses, his challenge fails. To the extent that he claims that the evidence itself was insufficient for the jury to return guilty verdicts on the eight counts of conviction, based on our review of the evidence presented at trial in the light most favorable to the government, we conclude that a rational jury could have found the essential elements of each of the crimes beyond a reasonable doubt.

Marcano, 290 Fed. App'x at 422. Nevertheless, the nature of Marcano's § 2255 claims makes a

---

518 F.3d 143, 149 (2d Cir. 2008). See United States v. Marcano, 290 Fed. App'x 421, 423-24 (2d Cir. Aug. 22, 2008). Then, following the Circuit's reversal of the codefendants' witness-retaliation convictions on sufficiency grounds, the government moved to dismiss that same charge as against Marcano (Count Five). On remand, the Court resentenced Marcano to 39 years.

brief recounting of the trial evidence appropriate.

## A. The Lucrative, Round-the-Clock Drug Trade

Principally through cooperator testimony, the government established Marcano's leadership role in a violent narcotics enterprise sometimes known as Lincoln Road Productions ("LRP"), a reference to the block on Lincoln Road in Brooklyn that intersects Flatbush Avenue, and its immediate vicinity. Raised in this neighborhood, Marcano and his colleagues also took control of it through the substantial and lucrative trade in crack cocaine they conducted there, daily and around the clock, from 1999 through 2003. To keep other drug dealers off their territory while also "keep[ing] the block pumping," LRP members engaged in a variety of tactics, including serving as look-outs for each other and concealing weapons in local mailboxes, but their principal modus operandi was violence and the threat of violence.

Two significant episodes of such violence were explored at trial—the murder of Wesley Thomas on July 9, 2001, for no apparent reason, during a robbery; and the series of ruthless retaliatory beatings inflicted on eventual cooperating witness Clinton Davy after he implicated Marcano in the robbery and murder.

## B. The Robbery and Murder of Wesley Thomas

The point-blank shooting of Thomas, as testified to by Davy, happened during a planned robbery that, initially, included a plan to kill Thomas. According to Davy, Marcano and he decided to rob another drug dealer, and they targeted Thomas because they believed he would be unarmed and because they had easy access to his apartment. Marcano expressed interest in killing Thomas because Thomas knew Davy's mother and Marcano's grandmother, so it was feared he would snitch if left alive.

As a set-up, Davy first phoned Thomas to order marijuana from him. Marcano was not in

possession of the weapon he usually carried, a 9 millimeter Highpoint, so Davy and he went to see Jamil Bannister (eventually a cooperator and trial witness), who sold Marcano a loaded, Ruger nine millimeter semi-automatic pistol, for which Marcano agreed to pay, at a later time, between $500 and $600. So armed, Marcano walked with Davy and Bannister to Thomas's apartment building. (Davy's car was already parked in a garage beneath the building). Outside, Davy spotted Everton Scott, known to be Thomas's marijuana supplier, and tried to avoid eye contact, but Scott then placed a call on his cell phone, and Davy believes it was to alert Thomas to Marcano's and his arrival.[2] Bannister stayed with Davy's car in the basement while Marcano and Davy went up to Thomas's apartment. As they neared the elevator, they encountered a man they knew who alerted them to the presence of a camera, which prompted Davy to tell Marcano that he had reconsidered their plan and decided they should only rob Thomas, not kill him, and Marcano agreed.

Once they reached the door to Thomas's apartment on the second floor of the building, Marcano and Davy again considered abandoning their plan but then Thomas, apparently expecting them, opened his door and let them in. Davy saw some marijuana but asked Thomas about the quantity he ordered, and Thomas asked Davy for the money. Marcano then pulled out his weapon and shot Thomas twice. Thomas retreated back into his bathroom; Marcano followed him and shot through the bathroom door several more times. In all, eight bullets penetrated Thomas's body.

Davy immediately took the available marijuana and fled. When he joined up with Bannister in the garage, he told him that Marcano had shot Thomas. The next morning, after he had learned that Thomas was killed, Davy met with Marcano and the two argued; Marcano was

---

[2] Scott testified that he saw three men (one of whom matched Marcano's physical appearance) in the basement of Thomas's building shortly before the shooting.

upset that Davy had not taken more marijuana when he fled Thomas's apartment, while Davy was upset that Marcano shot Thomas because it was not part of their plan.[3]

### C. Davy's Contacts with Law Enforcement and the Ensuing Retaliatory Beatings

Davy testified that he was an early suspect in the murder and was questioned by police only four days later, on July 13, 2001. In his initial interview, to avoid implicating himself, he placed two imaginary persons at the crime scene and claimed that he remained in the garage. He met with Marcano the next day, recounted to him the substance of his interview, and Marcano said they should be okay if Dave stuck to that story.

Davy continued to meet with police frequently during the next two weeks, and continued to be untruthful, aware of the LRP credo that "informers were dead." In his words, during those initial interviews, "I wasn't actually cooperating, I was lying." That changed, however, on August 2, 2001, when he gave police a statement implicating Marcano in the robbery and murder (although Davy was, again, not entirely truthful because he did not admit that he accompanied Marcano upstairs to Thomas's apartment). Sometime after that interview, Davy and Marcano stopped speaking because, in Davy's view, Marcano "felt like [Davy] was giving him up."

In a subsequent statement given on May 8, 2002, Davy again implicated Marcano, and

---

[3] Additional testimony relating to the robbery and murder came from Bannister and cooperator Rohan McCrea. Bannister's account of the events of July 9, 2001 is generally consistent with Davy's. He further testified that about a week after the shooting, he asked Marcano for the money he owed him for the gun; that Marcano gave him approximately $200 worth of marijuana as payment; and that he (Bannister) was not fully truthful in his initial interview with law enforcement. McCrea testified that Marcano admitted to him that he had robbed and killed Thomas with Davy present, and that he and his girlfriend, Daphne Brunet-Bruner, had disposed of the clothing he used during the incident. The government also called Brunet-Bruner, who testified that she initially told police that Marcano told her that he robbed Thomas, but that she said this because she was angry at him, and that it was not true. Brunet-Bruner also admitted that she had initially told police that she helped Marcano dispose of clothing used during the robbery but claimed that that, too, was not true.

for the first time implicated himself as well by admitting he was with Thomas in the apartment (although Davy was again not entirely truthful because he said there was a third person present and he denied that he took anything from the apartment). On December 7, 2002, Davy was arrested for a different robbery; in exchange for dismissal of that charge, he furnished additional information about the Thomas robbery/murder that police used to obtain a warrant to search the apartment Marcano used to sell drugs. Following that raid and the arrest of Marcano, Davy heard from people in the neighborhood that Marcano suspected him of having snitched.

Marcano eventually recruited LRP members to intimidate Davy on his behalf.[4] Davy suffered the first of three retaliatory assaults on February 3, 2003, in the apartment of Andrew Edwards who, along with Tyrone Mitchell, pointed a gun at Davy's head, punched and kicked him, and broke his ankle. Edwards told Davy during the beating that he was "lucky Black [i.e., Trigger Black, a/k/a Marcano] didn't kill" him for "snitching." Approximately a month later, Davy was attacked in the basement of his mother's restaurant by Mitchell, Zackee Campbell, and Patrick Edwards; Mitchell accused Davy of "telling on Black" and said "you ain't going to tell on me, too." A third and acutely savage attack occurred another month later, on April 8, 2003. Codefendants Cornelius Draper and Ledrell Hart, along with Campbell and Andrew Edwards, ruthlessly beat Davy with a firearm and clothing iron, whipped him with an electrical cord, poured bleach and vinegar into his wounds and sprayed insect repellent into his eyes, all while repeating that Davy had "snitch[ed] on Trigger Black." Edwards proposed that the group finish the job by killing Davy, but before they could carry out the plan the police arrived in response to

---

[4] Cooperating witness Rohan McCrea testified that Marcano said that he wanted to kill Davy "for snitching," but that he could not do it himself because he suspected that the police were expecting some sort of retaliation from him. Marcano did not want codefendant Ledrell Hart to do the killing because he thought Hart would do a clumsy job and it would lead right back to Marcano. Marcano initially recruited McCrea, who agreed to attack Davy only to appear loyal but did not actually intend to follow through.

a 911 call.[5]

### D. Additional Trial Evidence

Marcano testified in his own defense.  He admitted that he sold crack cocaine but disputed the quantity and otherwise denied being part of a drug conspiracy or using a firearm to further his drug trade.  He also disavowed any role in the robbery-homicide or the beatings of Davy.

In rebuttal, the government called New York City Police Detective Peter Margraf, who testified that, before he died, Thomas told him that he knew the individuals who had shot him but did not name them.  Instead, Thomas said to Margraf that he "would take care of it [him]self." Thomas also told Margraf that the two individuals who shot him were "Black males" and were wearing white t-shirts.


## DISCUSSION

**A.    The Sufficiency Challenge to the Jurisdictional Element of Counts One, Two and Three**

In accordance with United States v. Fabian, 312 F.3d 550, 555 (2d Cir. 2002), the governing Second Circuit law at the time of Marcano's March 2005 trial, the Court instructed the jury, in pertinent part, as follows: "Under the law, all illegal drug activity, even if it is purely local in nature, has an effect on interstate commerce.  Therefore, if you find that the object of the robbery at issue was to obtain illegal drugs or money earned from the sale of illegal drugs, this element is satisfied." Court Exhibit # 3 at 17.  Five years later, however, in United States v. Parkes, 497 F.3d 220 (2d Cir. 2007), the Second Circuit abrogated Fabian and held, instead, that

---

[5] It was after this third attack that Davy began assisting law enforcement in the investigation of this case.

"the Hobbs Act requires the jury to determine, beyond a reasonable doubt, whether the conduct affected, or would have affected, interstate commerce." Id. at 230. Because Marcano's direct appeal was pending while Parkes was issued, the Parkes standard governs his case. See United States v. Needham, 604 F.3d 673, 678-79 (2d Cir.), cert. denied, 131 S. Ct. 355 (2010).

Marcano believes he is entitled to relief under section 2255 because the jurisdictional element of Counts One, Two and Three was not submitted to the jury as required by Parkes, and in any event because, in his view, the evidence the government offered on that element is legally insufficient.

The Court disagrees.

As a threshold matter, it is doubtful that this claim is even cognizable in this section 2255 proceeding. "It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (internal quotations and citations omitted), cert. denied, 558 U.S. 1137 (2010). The prohibition on relitigation applies here because, as noted, Marcano made an appellate challenge to the sufficiency of the evidence on all counts of conviction and the Second Circuit rejected it. Marcano, 290 Fed. App'x 421.

Marcano's section 2255 counsel David J. Cohen, however, appears to take the position that the claim is not barred here because Marcano's appellate sufficiency claim was a general credibility challenge that did not specifically address Hobbs Act jurisdiction. Cf. Pitcher, 559 F.3d at 123 ("[a] claim is not barred from being brought in a § 2255 motion where it rests upon a different legal 'ground' for relief than the one previously raised") (internal citation omitted). Without engaging the arguably hairsplitting distinctions between a "ground" and the differing factual or legal "arguments" that may be advanced in support, the Court concludes, based on

careful examination of the record, that the specific jurisdictional claim Marcano advances here was presented to and rejected by the Second Circuit on Marcano's direct appeal, and so is procedurally barred.

Marcano's initial brief, prepared by trial counsel Michael Marinaccio, was submitted on or about April 5, 2007 and as Mr. Cohen represents, its sufficiency argument addressed only credibility. The brief pre-dated Parkes by several months but did not address jurisdiction. After Parkes was issued, but before oral argument on his appeal on May 6, 2008, Marcano obtained new counsel—Mr. Cohen—who then moved for leave to file a supplemental and/or replacement brief. Mr. Cohen's motion specifically argued that Mr. Marinaccio did not properly brief sufficiency because, inter alia, he did not also argue (as the proposed supplemental brief would) that "[t]he evidence on Counts 1 and 2 was insufficient because the Government failed to prove that the marijuana previously traveled in interstate commerce."

Against this backdrop, the Circuit's decision on Marcano's appeal is reasonably understood as disposing of the entirety of Marcano's sufficiency challenge. First, the Circuit took express account of the change in representation and the request for additional briefing. Marcano, 290 Fed. App'x at 421 ("[p]rior to oral argument, but well after all briefs had been filed, Marcano obtained new counsel. At oral argument, this Court granted Marcano's counsel's request to make a motion to seek permission to file a supplemental brief. Counsel maintained that there were many issues that had not been sufficiently briefed in defendant's original brief to this Court."). Second, although the Court announced that it had "reviewed counsel's motion" and "conclude[d] that the issues counsel raises do not warrant supplemental briefing," id., the panel *did* review the motion, which contained succinct capsule summaries sufficient to alert the Court to the existence of the jurisdictional claim. Third, and most crucially, because the Circuit

must be presumed to have known the state of its own jurisprudence—by the time of the decision in Marcano's appeal, Parkes had been the law for nearly a year—the sufficiency portion of its decision on Marcano's appeal must be read as disposing of *both* the general credibility claim raised by Mr. Marinaccio *and* the jurisdiction-based claim previewed in Mr. Cohen's motion. As set forth above, the Court wrote:

> Because Marcano primarily challenges the credibility of the witnesses, his challenge fails. To the extent that he claims that the evidence itself was insufficient for the jury to return guilty verdicts on the eight counts of conviction, based on our review of the evidence presented at trial in the light most favorable to the government, we conclude that a rational jury could have found *the essential elements of each of the crimes* beyond a reasonable doubt.

Id. at 422 (emphasis added).

In any event, even if the jurisdictional claim were cognizable here, it would fail on the merits. Under Needham, where, as here, "the source of [the claimed] . . . error is a supervening decision," the dispositive inquiry is "whether th[e] error affected substantial rights." 604 F.3d at 678, 679. "An error affects a defendant's substantial rights if it is prejudicial and it affected the outcome of the district court proceedings." Id. (internal quotations and citation omitted). To assess whether there was prejudice, a court must "closely examine the record to determine whether the jury, had it been properly instructed, would have found the jurisdictional element satisfied, or whether the government failed to prove this element beyond a reasonable doubt." Id. at 680.

The Court concludes that Marcano's substantial rights were not affected by the Court's instruction on interstate commerce. Notably, Marcano does not dispute the substantive jurisdictional standard under Parkes, where the Court reaffirmed that "[t]he Hobbs Act prohibits robberies that affect interstate commerce 'in any way or degree,' so the required showing of an effect on interstate commerce is *de minimis*." 497 F.3d at 230 (quoting 18 U.S.C. § 1951(a)).

10

Indeed, "[t]he jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a very slight effect on interstate commerce," and "[e]ven a potential or subtle effect on commerce will suffice." Id. (internal quotation marks and citation omitted). See also United States v. Jones, 30 F.3d 276, 284-85 (2d Cir. 1994) (the "in any way or degree" standard is satisfied "even though the effect [on commerce] is not immediate or direct or significant, but instead is postponed, indirect and slight") (quoted approvingly in Parkes, 497 F.3d at 230). Further, on a sufficiency challenge, the Court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks and citation omitted), cert. denied, 134 S. Ct. 71 (2013). A verdict must be upheld as long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

Applying these standards, the Court concludes that a rational jury given the Parkes instruction could have found the jurisdictional element beyond a reasonable doubt. The parties agree that the pertinent evidence concerns the testimony relating to the source of the marijuana that Marcano and Clinton Davy stole or intended to steal from drug dealer Wesley Thomas. Davy testified that he telephoned Thomas and ordered eight pounds of marijuana from him—specifically, "Jamaican, yard weed," that was "made in Jamaica"—and that Thomas told him that "he would have it" at the time the sale was supposed to take place. Everton Scott, Thomas's usual supplier, testified that he typically supplied Thomas with marijuana that came from Jamaica but that he did not supply the four pounds of marijuana that Davy and Marcano stole from Thomas at the time of the murder.

The government argues that this evidence proves the required "potential," *de minimis* effect on interstate commerce. Marcano, however, argues that the ordering of Jamaican marijuana cannot count for jurisdictional purposes because the placing of the order was just a ruse, *i.e.*, that Davy and Marcano did not really care whether the marijuana they stole came from Jamaica, as evidenced by the fact that they went directly to Thomas's apartment after Davy placed the order, without allowing time for Thomas to obtain the Jamaican product or even verifying that he obtained it. Thomas was a relatively randomly selected target, Marcano argues, and at the very least, the objective of the robbery was not specifically to obtain *Jamaican* marijuana.

The government, however, is unquestionably correct. Marcano cites no authority—and there is none of which the Court is aware—holding that a proven effect on interstate commerce must also be the specific objective of the Hobbs Act robbery to count for jurisdictional purposes. A potential and very slight effect on interstate commerce is all the cases require, and that was proven here.[6]

## B. The Challenge to the Aiding and Abetting Jury Charge on Count Three

### 1. Procedural Considerations

This claim presents a threshold procedural consideration: it was not raised in Marcano's principal appellate brief but, like the jurisdictional challenge, first appeared in the motion Mr.

---

[6] Although not a listed "ground" or "claim" on his counsel-prepared 2255 motion form, Marcano argues in his brief that the failure of trial and initial appellate counsel to raise and preserve the jurisdictional issue in anticipation of Parkes constitutes ineffective assistance. The claim does not present a basis for section 2255 relief: without reaching the issue of counsel's performance, the Court concludes that Marcano could not show the required prejudice because the jurisdictional claim has no merit. See generally Strickland v. Washington, 466 U.S. 668 (1984).

Cohen filed on Marcano's behalf in the Second Circuit for leave to file a supplemental brief. For the reasons discussed with respect to the jurisdictional claim, this Court believes that the Second Circuit's plenary sufficiency finding (*i.e.*, that "a rational jury could have found *the essential elements of each of the crimes* beyond a reasonable doubt," Marcano, 290 Fed App'x at 422 (emphasis added)) should be read as having disposed of any factual claim premised on a defect in how the jury reached its verdict. Nevertheless, the Circuit also arguably invited Marcano to raise the claim here. See id. ("We hereby deny the motion for supplemental briefing without prejudice to whatever motions pursuant to 28 U.S.C. § 2255 Marcano may file raising directly or indirectly any issue presented in the motion."). Accordingly, without deciding whether the claim is procedurally barred—either because it was not raised in the initial brief and thus forfeited, or because it was rejected on the merits by the Circuit and therefore barred from being relitigated— the Court proceeds to the merits.

### 2. Is the Claim a Proxy for An Inconsistent Verdict Claim?

Although Marcano consistently labels this claim a challenge to the aiding and abetting instructions on Count Three (the use or possession of a firearm in connection with the robbery charged in Counts One and Two), in substance his is attacking the convictions on all three robbery-related counts on the ground that they are, in his view, inconsistent with his acquittal on the charge of murdering Wesley Thomas.

Marcano posits the inconsistency as follows: the jurors' decision to acquit on the murder charge—particularly because the available theories of conviction included felony murder and aiding and abetting—means that they "necessarily concluded that Mr. Marcano was not physically involved in the actual commission of the robbery itself." ECF # 2 at 39. Marcano continues:

13

The felony murder doctrine would have rendered Mr. Marcano liable if he merely assisted in the robbery because Mr. Thomas's death was a foreseeable consequence of engaging in the robbery. Moreover, if the jury believed Mr. Davy's testimony that Mr. Marcano accompanied Mr. Davy to purchase the gun and then carried the gun to the scene of the robbery, it should and would have found Mr. Marcano guilty of the murder on both the aiding and abetting and felony murder theories.

Thus, the verdict rendered by the jury as to Count 4 is in direct conflict with the verdict that the jury reached as to Count 3. There is no factual or legal mechanism by which an individual can be found not guilty of a murder that was the direct result of a robbery and also be found to have (1) conspired to commit the robbery with a firearm; (2) participated in that robbery; and (3) either used or carried (or aided and abetted the use or carrying of) the firearm in that robbery that was used to murder the victim.

Id. at 39-40.

Throughout his papers, Marcano continues to identify, as the principal alleged defect in the instructions, the fact they "allowed" the inconsistency of which he complains, rather than point to any particular wording error or omission. Notably, when Marcano first put this claim to paper, in the motion filed by his new appellate (and now section 2255) counsel in the Second Circuit for leave to file a replacement or supplemental brief, he asserted that "[t]he evidence is insufficient on Count 3 *because of the inconsistent Count 4 verdict*" and that "the instructions . . . were confusing *and explain the inconsistent verdicts*." ECF # 2 at 109 (emphases added). That branch of the motion concludes that the Court's "instructions w[ere] plain error and confused the jury. *It is the only explanation for the inconsistent verdicts in Counts 3 and 4*." ECF # 2 at 114 (emphasis added). Likewise, in the lengthy discussion in his § 2255 briefs, Marcano's premise is the flawed belief that the acquittal on Count 4 can be a valid analytical springboard for measuring the instructions on Count 3. See, e.g., ECF # 2 at 38 ("The jury's acquittal of Mr. Marcano as to Count 4 signified its belief that Mr. Marcano was not at the scene of the robbery and, therefore, could not have carried, possessed or used or aided and abetted the carrying or

14

possession or use of the firearm"); id. at 44 ("Thus, the only means by which the jury could have convicted Mr. Marcano of Count 3 would have been due to a misinterpretation of the misleading and erroneous jury instructions—that Mr. Marcano could have been convicted of aiding and abetting the carrying and/or possession of the firearm even though he was not present at the robbery.").

To the extent Marcano's claim of jury instruction error is merely a proxy for an inconsistent verdict claim, it cannot be entertained by this or any court. See generally Dunn v. United States, 284 U.S. 390, 393 (1932); United States v. Powell, 469 U.S. 57 (1984); United States v. Acosta, 17 F.3d 538, 545 (2d Cir.1994). Indeed, the Supreme Court specifically rejected as "imprudent and unworkable a rule that would allow criminal defendants" to do exactly what Marcano seeks to do here, namely, "challenge inconsistent verdicts on the grounds that in their case the verdict was not the product of lenity, but of some error that worked against them." Powell, 469 U.S. at 66. Courts do not review verdicts for claims of inconsistency because doing so "would be based either on pure speculation, or would require inquiries into the jury's deliberations that court generally will not undertake." Id.

### 3. The Gap between the Purported Legal Claim and The Reality of the Trial Record

The Court must remark here upon a disturbing feature of this branch of Marcano's application: namely, the extraordinary gap between the four corners of Marcano's legal claim and the reality of the trial record. Befitting a cooperator case, the defense was largely credibility-driven, and counsel for Marcano took the additional step of affirmatively asserting to the jury in summation that "the government has proved beyond a reasonable doubt that Clinton Davy and Jamil Bannister shot and killed Wesley Thomas." The fact that the jury struggled with the

murder count is a matter of record. <u>See</u>, <u>e.g.</u>, Court Exhibit 8 (jury note asking, "If a party is present and participating in the commission of a crime, but the jury isn't convinced that the person used a weapon himself, can we find the person guilty on the 3rd charge and/or 4th charge?")

The jury note, of course, speaks for itself, and the Court will not take the additional step of engaging in the very practice for which it has chided Marcano—speculating about what the jury was thinking—but the fact remains that the jury *did* credit much of Davy's and the other cooperators' testimony because it unanimously found the evidence sufficient to convict Marcano of the counts charging him with a role in the robbery, the lucrative drug trade, and the beatings inflicted on Davy, and the Second Circuit expressly affirmed those findings. All discussion of verdict consistency and validity *as a factual matter* should begin and end there.

Further still—and again, regardless of the acquittal on the murder charge—both Davy and Bannister testified that *it was Marcano who purchased the gun used in the robbery.* The fact that Marcano quarrels with aiding and abetting liability for the robbery-related weapons charge, in the face of this evidence, is indefensible. Even worse, his quarrel has spawned an unduly lengthy analytical odyssey through aiding and abetting and "in furtherance of" theory relatively divorced from the trial evidence.[7]

### 4. There was No Error in the Court's Instruction on Aiding and Abetting the Firearms Offense

To the extent Marcano's jury instruction claim is bona fide and not a pretext for his inconsistent verdict claim, the Court concludes that it committed no error in instructing the jury

---

[7] Indeed, the nearly 100 pages of briefing (some in reduced font) that Marcano devoted to this claim alone tend to confuse rather than illuminate the issues.

on aiding and abetting a firearms offense. Marcano's assertions to the contrary are frivolous.

On a claim of jury instruction error, the question is whether "the entire charge delivered a correct interpretation of the law." United States v. Quattrone, 441 F.3d 153, 177 (2d Cir. 2006) (internal quotation marks and citation omitted). Relief is warranted "only where, viewing the charge as a whole, there was a prejudicial error," which exists when "a charge either fails to adequately inform the jury of the law, or misleads the jury as to a correct legal standard." Id. (internal quotation marks and citation omitted). An error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Id. (internal quotation marks and citations omitted).

Reviewing the instructions under the standards of "current law," Rasanen v. Doe, 723 F.3d 325, 338 (2d Cir. 2013), would seem to require that the Court take account of Rosemond v. United States, __ U.S.__, 134 S. Ct. 1240 (2014), which deals directly with the essential elements of an aiding and abetting charge in the context of a Section 924(c) offense. Rosemond was issued during the pendency of this proceeding and, at Marcano's request, was the subject of extensive supplemental briefing. In a lengthy analysis under Teague v. Lane, 489 U.S. 288 (1989), however, Marcano argues that portions of the decision apply retroactively and other portions do not, and at least one district court in this Circuit has decided that Rosemond does *not* apply retroactively on collateral review, at least for purposes of authorizing a second or successive motion § 2255 application. Minaya v. United States, 41 F. Supp. 3d 343, 345 (S.D.N.Y. 2014). The government, by contrast, treats Rosemond as a "substantive" decision that "narrow[s] the scope of a criminal statute by interpreting its terms," Schiro v. Summerlin, 542 U.S. 348, 351-52 (2004), and that is therefore retroactive.

Without formally deciding the question of retroactivity—or whether Rosemond

materially alters Second Circuit law—the Court has nevertheless examined the relevant portions of this Court's instructions in light of <u>Rosemond</u>'s comprehensive discussion and finds no jury instruction error, either under <u>Rosemond</u> or pre-<u>Rosemond</u> Second Circuit law.

At the time of Marcano's trial, Second Circuit law provided that a defendant "cannot be convicted as an aider and abettor under § 924(c) merely because he knew that a firearm would be used or carried." <u>United States v. Masotto</u>, 73 F.3d 1233, 1240 (2d Cir. 1996), <u>cert. denied</u>, 519 U.S. 810 (1996) (quoting <u>United States v. Medina</u>, 32 F.3d 40, 45 (2d Cir. 1994)). "Instead, the defendant must have 'performed some act that directly facilitated or encouraged the use or carrying of a firearm.'" <u>Masotto</u>, 73 F.3d at 1240 (quoting <u>Medina</u>, 32 F.3d at 45).

This Court's charge plainly satisfied this standard. In a section of the charge separately captioned "Aiding and Abetting in Firearms Charges" that supplemented the general instructions on aiding and abetting, the Court alerted the jury that "[t]here are specific rules governing the application of 'Aiding and Abetting' theory to firearms charges." Court Ex. 3 at 40. As set forth above, the Court instructed the jury, in pertinent part,

> you may not find the defendant guilty of aiding and abetting unless you first find that he is guilty of an underlying crime. . . . Additionally, it is not enough for the government simply to show that the defendant aided and abetted the other person in the commission of the underlying offense. The government must prove beyond a reasonable doubt *that the defendant performed some act that directly facilitated or encouraged the other perpetrator in the use or carrying of a firearm.* That is, the defendant must have actively assisted the other person in using or carrying the firearm so that he could commit the specific crime of violence or drug trafficking charged in the Indictment.

<u>Id.</u> at 40-41. (emphasis added).[8]

---

[8] The Court expressly made these instructions applicable to Count 3 in its written response to the juror note referenced *supra* at p. 15. The response advised the jury, in pertinent part:

> You may find the defendant guilty on Counts 3 and 4, if the government proves **each** element of the crimes charged beyond a reasonable doubt. You must,

The italicized language is precisely what <u>Medina</u> and <u>Masotto</u> require.

The Court turns now to <u>Rosemond</u>, which holds that, to prove a defendant aided and abetted a § 924(c) offense, the government must show "that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." 134 S. Ct. at 1243. Brief examination of the context, however, illuminates this holding.

The trial court had instructed the jury that the government had to prove that "(1) the defendant knew his cohort used a firearm in the drug trafficking crime, and (2) the defendant knowingly and actively participated in the drug trafficking crime." <u>Id.</u> at 1244. The Supreme Court found the first branch of the charge defective because the language failed to convey that a "defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice . . . to aid an armed offense." <u>Id.</u> at 1249. In other words, "[a]n active participant in a drug transaction [or crime of violence] has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." Id. at 1249.[9]

_____

however, bear carefully in mind my instructions to you on "aiding and abetting," particularly with respect to the firearms charges. It is not enough to find that the defendant was present and participated in the robbery or murder. You must find beyond a reasonable doubt that the defendant either possessed, carried or used a firearm in furtherance of the crime, or that he aided and abetted another to do so, and that he acted with the requisite level of intent required by the Court's instructions on the count you are considering.

Court Exh. 8-A (emphasis in original). The instructions on intent for Count Three (to which the supplemental instruction referred the jury) provided, in pertinent part, that that the government "must prove that the defendant knew what he was doing, that is, using or carrying a firearm in furtherance of the underlying crime of violence." Court Exh. 3 at 20.

[9] On the affirmative act element, not apparently at issue here, the Court held that because aiding and abetting liability is satisfied if a defendant "facilitated any part—even though not every part—of a criminal venture," <u>id.</u> at 1246, aiding and abetting a § 924(c) offense is established if

Several courts are of the view that Rosemond reduced the government's pre-Rosemond burden in the Second Circuit. See, e.g., United States v. Santana, 552 Fed. App'x 87, 90 n.1 (2d Cir. Jan. 29, 2014) (noting, in response to the Supreme Court's grant of certiorari in Rosemond, that the other Circuits' 924(c) aiding and abetting standards required less of the government than the Second Circuit's, and thus that "Rosemond's outcome will not affect the result [in that case] because this Circuit requires active facilitation or encouragement in order to establish aiding and abetting liability, *which imposes the strictest standard of proof on the government*") (emphasis added), cert. denied, 134 S. Ct. 2718 (2014); United States v. Caraballo, 2014 WL 3535348, *7 (D. Vt. July 16, 2014) ("The government, however, is equally correct that Rosemond effectively lightened the government's burden of proof because the government need not prove the defendant directly facilitated or encouraged the use or carrying of a firearm (the former Second Circuit standard) but need only prove the defendant's advance knowledge that another would use or carry a firearm in a drug trafficking crime.").

Without deciding whether Rosemond upped or lowered the ante, the Court concludes that in this case, the instructions pass muster under Rosemond. As recounted above, the Court instructed the jury that, to convict Marcano of aiding and abetting the use or carrying of a firearm in furtherance of the Thomas robbery, it must find that Marcano "performed some act that directly facilitated or encouraged the other perpetrator in the use or carrying of a firearm [,t]hat is, the defendant must have actively assisted the other person in using or carrying the firearm so that he could commit the specific crime of violence." Court Exh. 8 at 41. Advance knowledge that a confederate would carry a gun—what Rosemond requires—is inherent in this instruction. Simply put, if a defendant "directly facilitate[s]" or "encourage[s]" a confederate to carry a

---

the defendant facilitated *either* the use or carriage of the firearm *or* the commission of the predicate violent or drug trafficking offense. Id.

weapon in order to commit a robbery, it is axiomatic that he "knows that one of his confederates will carry a gun." Id. at 1249. In an unpublished decision, the Second Circuit reached essentially the same conclusion. See United States v. Young, 561 Fed. App'x 85, 92 (2d Cir. Apr. 4, 2014) ("the district court instructed, in accordance with United States v. Medina, 32 F.3d 40, 45 (2d Cir.1994), that [aiding and abetting] liability attached under § 924(c) if the defendant 'performed some act that facilitated or encouraged the actual using, carrying of, or possession of the firearm in relation to the underlying crime.' By finding that [the defendant] encouraged the "actual using, carrying of, or possession" of a firearm in the . . . robbery, the jury necessarily also had to find that he had advance knowledge of the firearm-related conduct, consistent with the Supreme Court's explication in Rosemond") (internal record citation omitted), cert. denied, 135 S. Ct. 387 (2014).

In any event, as discussed, Davy and Bannister both testified that Marcano went to Bannister to purchase a gun to use in the robbery of Thomas. Construing that testimony in the light most favorable to the government—i.e., assuming it was credited by the jury—the Court concludes that there was legally sufficient evidence that Marcano had advance knowledge that a gun would be used in the robbery of Wesley Thomas. The fact that the jury was not convinced that it was Marcano who pulled its trigger is irrelevant.

For all the foregoing reasons, Marcano's claim addressed to the instructions on aiding and abetting liability for Count 3 does not present a basis for habeas relief.

## C. The Sufficiency Challenge to the Witness Tampering Conviction (Count 7)

Marcano does not dispute the existence of the conspiracy to tamper with witness Clinton Davy but claims only that there was insufficient evidence that he was a member.

This sufficiency challenge is situated similarly to the Count One jurisdictional challenge:

it was a theory not advanced in the initial appellate brief prepared by Mr. Marinaccio but was first raised in the motion for leave to file supplemental briefing prepared by Mr. Cohen. For reasons already discussed, the claim was also, therefore, rejected on the merits by the Second Circuit in its plenary sufficiency finding and so is procedurally barred from consideration here.

In any event, the claim is frivolous. "[O]nce a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming." United States v. Tawik, 391 Fed. App'x 94, 96 (2d Cir. Aug. 30, 2010) (internal quotations and citations omitted), and may be entirely circumstantial. In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 113 (2d Cir. 2008), cert. denied, 556 U.S. 1283 (2009). There was ample evidence, as reviewed at the outset of this memorandum, linking Marcano to the conspiracy to tamper with Davy: testimony that, inter alia, Marcano became concerned after the Thomas murder that Davy was cooperating with the police; Marcano spoke openly about wanting to kill him for doing so; Marcano was also concerned about retaliating himself because he believed the police were expecting him to retaliate against Davy; and during each beating, one or more of the LRP-member assailants spoke to Davy of his having snitched on Marcano.

## CONCLUSION

For the reasons discussed, Cory Marcano's application for relief under 28 U.S.C. § 2255 is denied. Because Marcano has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
       March 19, 2015

/s/ Judge Raymond J. Dearie

_____
RAYMOND J. DEARIE
United States District Judge